## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## NORTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **REPORT AND RECOMMENDATION** |
| **Plaintiff,** | **Case No. 1:07-cr-00046-PGC** |
| **v.** | |
| **GREGORY R. WRIGHT,** | **District Judge Paul G. Cassell** |
| **Defendant.** | **Magistrate Judge Paul M. Warner** |

Before the court is Gregory R. Wright's ("Defendant") motion to suppress,[1] which was referred to Magistrate Judge Paul M. Warner by District Judge Paul G. Cassell.[2]  The court has carefully reviewed the written memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the Rules of Practice for the United States District Court for the District of Utah, the court has concluded that oral argument is not necessary and will determine the motion on the basis of the written memoranda.  *See* DUCrimR 47-1 (stating that motions in criminal matters are governed by civil rule 7-1); DUCivR 7-1(f).

---

[1]  *See* docket no. 20.

[2]  *See* docket no. 21.

## PROCEDURAL HISTORY

Defendant was charged by complaint on April 17, 2007,[3] and was later indicted on May 2, 2007.[4]  On April 20, 2007, an Assistant Federal Defender (the "first attorney") was appointed to represent Defendant in this case.[5]  The first attorney filed Defendant's motion to suppress on May 30, 2007.[6]  Although the motion was filed, it was not accompanied by a supporting memorandum, most likely because the first attorney believed that an evidentiary hearing would be held prior to full briefing of the motion.

However, rather than simply filing a short opposition to Defendant's motion, the United States of America (the "USA") filed a full responsive memorandum in opposition to the motion on June 1, 2007.[7]  In that opposition memorandum, the USA asserted that an evidentiary hearing on Defendant's motion is unnecessary because it presents only a facial challenge to sufficiency of the affidavit in support of the search warrant in this case.[8]  *See Franks v. Delaware*, 438 U.S. 154, 155-56, 171-72 (1977).

_____

[3] *See* docket no. 1.

[4] *See* docket no. 15.

[5] *See* docket no. 4.

[6] *See* docket no. 20.

[7] *See* docket no. 23.

[8] *See id*.

Thereafter, on June 25, 2007, the first attorney filed a motion to withdraw as counsel of record for Defendant because of a conflict of interest.[9]  At a hearing on July 2, 2007, the court granted that motion and appointed new counsel (the "second attorney") to represent Defendant.[10] At the same hearing, the court ordered the second attorney to notify the court within one week whether he intended to pursue Defendant's previously filed motion to suppress.[11]

Later that same day, and notwithstanding the court's appointment of the second attorney, a different attorney (the "third attorney) filed a notice of appearance indicating that he would be representing Defendant in this case.[12]  To confuse matters further, the third attorney filed a motion to withdraw as counsel for Defendant several hours later in the same day, which stated that the third attorney was seeking to withdraw at Defendant's request.[13]

To resolve the confusion relating to Defendant's counsel of record, the court held another hearing the following day, July 3, 2007.[14]  At that hearing, Defendant stated his desire to have the second attorney remain as his counsel of record.  Accordingly, the court granted the third

---

[9]  *See* docket no. 24.

[10]  *See* docket no. 25.

[11]  *See id*.

[12]  *See* docket no. 26.

[13]  *See* docket no. 27.

[14]  *See* docket no. 28.

attorney's motion to withdraw and ordered the second attorney to remain as Defendant's counsel of record.[15]

On or about July 10, 2007, the second attorney notified the court of his intention to pursue Defendant's previously filed motion to suppress.  The second attorney also indicated his agreement with the USA's position that an evidentiary hearing on the motion is unnecessary.  *See id.*  Accordingly, the court entered an order setting a briefing schedule for the motion.[16]

On July 27, 2007, the second attorney filed a memorandum in support of Defendant's motion to suppress.[17]  On August 2, 2007, the USA filed a new memorandum in opposition to the motion.[18]  According to the briefing schedule set by the court, Defendant's reply memorandum was then due within seven days after the filing of the USA's opposition memorandum.[19]  Calculating that seven-day period in accordance with rule 45 of the Federal Rules of Criminal Procedure, Defendant's reply memorandum was due on or before August 16, 2007.  *See* Fed. R. Crim. P. 45(a), (c).  Because the second attorney did not file a reply memorandum by that date, the court contacted him as a courtesy to inquire whether he intended to do so.  In response, the second attorney indicated that he needed several days to make that determination.  He also indicated that if he did intend to file a reply memorandum, he would request an extension of time

---

[15]  *See id.*

[16]  *See* docket no. 29.

[17]  *See* docket no. 30.

[18]  *See* docket no. 31.

[19]  *See* docket no. 29.

for doing so from the USA.  The second attorney eventually contacted the court on August 24, 2007, to indicate that he would not be filing a reply memorandum.  Consequently, the court took Defendant's motion to suppress under advisement on August 24, 2007.[20]

## FACTUAL BACKGROUND

On March 15, 2007, Detective Ryan Reid ("Reid") of the Roy City Police Department sought a warrant to search the premises of Defendant's home address from Judge Roger S. Dutson of the Utah State Second District Court.[21]  Reid presented to Judge Dutson an affidavit (the "Reid Affidavit") in support of his request for a search warrant.[22]  Because Defendant's motion to suppress makes only a facial challenge to the sufficiency of that affidavit in support of the search warrant, the court's inquiry is limited to the four corners of the Reid Affidavit.  *See Franks*, 438 U.S. at 155-56, 171-72.  Accordingly, all of the following background information has been taken from the Reid Affidavit.

---

[20] On September 5, 2007, another attorney (the "fourth attorney") filed a motion to allow him to substitute for the second attorney as counsel of record for Defendant.  *See* docket no. 32. By that date, the court had already taken Defendant's motion to suppress under advisement and determined that oral argument would not be helpful or necessary.  Accordingly, the court is issuing this Report and Recommendation on Defendant's motion to suppress prior to resolving the fourth attorney's motion to substitute as counsel of record for Defendant.

[21] *See* docket no. 31, Exhibits A, B.

[22] *See* docket no. 31, Exhibit A.

After detailing Reid's experience and training, the Reid Affidavit provides information about each of the confidential informants (collectively, the "CIs") who provided information about Defendant to Reid.[23]

Reid has known the first confidential informant ("CI No. 1") since the summer of 2005.[24] Since that time, CI No. 1 has assisted Reid in several narcotics cases, conducted numerous controlled purchases of drugs, and provided information that led to the seizure of over thirty pounds of methamphetamine.[25]  Reid has always found CI No. 1 to be credible.[26]

Reid has also known the second confidential informant ("CI No. 2") since the summer of 2005.[27]  Since that time, CI No. 2 has provided information about a large-scale methamphetamine dealer in the Ogden, Utah area that has been substantiated by Reid.[28]  Reid believes that CI No. 2 has a good reputation for being honest and trustworthy, and Reid has found CI No. 2 to be nothing but credible.[29]

---

[23]  *See* Reid Affidavit at p. 2.

[24]  *See id.*

[25]  *See id.*

[26]  *See id.*

[27]  *See id.*

[28]  *See id.*

[29]  *See id.*

Reid has known the third confidential informant ("CI No. 3") since the fall of 2006.[30]  CI

No. 3 has provided information that led to the arrest of two felons.[31]  That information has been

authenticated by both CI No. 1 and CI No. 2, as well as other law enforcement investigators.[32]

Reid has found CI No. 3 to be reliable.[33]

The fourth confidential informant ("CI No. 4") was a large-scale methamphetamine

distributor in the Ogden, Utah area between 2002 and 2006.[34]  In 2006, Reid recruited CI No. 4 to

be a confidential informant.[35]  Through information and evidence provided to Reid, CI No. 4 has

assisted in the seizure of over thirty pounds of methamphetamine and helped in the prosecution

of at least five large-scale drug dealers.[36]  Reid has found CI No. 4 to be dependable and

credible.[37]

The Reid Affidavit then provides the following factual information about the

investigation.[38]  In May 2003, the Weber County Sheriff's Office received a call indicating that

---

[30]  *See id.*

[31]  *See id.*

[32]  *See id.*

[33]  *See id.*

[34]  *See id.*

[35]  *See id.*

[36]  *See id.*

[37]  *See id.*

[38]  *See id.* at p. 2-3.

two suspicious people were meeting in a church parking lot.[39]  According to the caller, it appeared that the two people were conducting a drug transaction.[40]  Deputies from the Weber County Sheriff's Office responded to the reported scene, but not in time to make contact with the two individuals.[41]  However, the caller provided those deputies with the license plate number from one of the vehicles that had been at the scene.[42]  Using that information, the deputies learned that the vehicle belonged to Defendant and that his address was 3750 South Midland Drive, #15, in Roy, Utah.[43]  The deputies did not attempt to contact Defendant at that time.[44]

In March 2004, Reid received an anonymous drug complaint about Defendant.[45]  The complainant indicated to Reid that Defendant was selling ounces of methamphetamine and lived with his mother at 3750 South Midland Drive, #15, in Roy, Utah.[46]  The complainant also indicated that while Defendant stored the methamphetamine at his home, he did not sell it from there, instead choosing to deliver it to buyers.[47]  On September 1, 2004, Reid made contact with

---

[39] *See id.* at p. 2.

[40] *See id.* at p. 2-3.

[41] *See id.* at p. 3.

[42] *See id.*

[43] *See id.*

[44] *See id.*

[45] *See id.*

[46] *See id.*

[47] *See id.*

Defendant at his home, but Defendant told Reid that he did not live there anymore and was simply visiting his mother.[48]  Later, Defendant's mother corroborated that story, and the case was closed.[49]

In August 2005, Reid again received an anonymous drug complaint about Defendant.[50] The complaint stated that Defendant was a large-scale methamphetamine dealer.[51]  Thereafter, Reid attempted to contact Defendant but was unsuccessful.[52]

In the fall of 2006, CI No. 1 and CI No. 2 contacted Reid and explained that Defendant was a large-scale methamphetamine dealer in the Weber County, Utah area and resided at 3750 South Midland Drive, #15, with his mother.[53]  Both CI No. 1 and CI No. 2 identified the persons in Defendant's methamphetamine supply chain.[54]  Toward the end of 2006, Reid arrested one of those suppliers and confirmed that he or she had been supplying Defendant with methamphetamine.[55]  That supplier also provided Reid with detailed information about Defendant's drug trafficking business (e.g., the usual quantity of methamphetamine Defendant

---

[48]  *See id.*

[49]  *See id.*

[50]  *See id.*

[51]  *See id.*

[52]  *See id.*

[53]  *See id.*

[54]  *See id.*

[55]  *See id.*

purchased, where Defendant stored the methamphetamine in his home, and to whom Defendant was then selling the methamphetamine).[56]  Thereafter, upon being recruited by Reid, that supplier became CI No. 4.[57]

In December 2006, CI No. 3 contacted Reid and gave a detailed account of Defendant's drug distribution network.[58]  CI No. 3 indicated that because Defendant's main supplier of methamphetamine was arrested earlier in 2006, Defendant had found a new supplier in Salt Lake City, Utah, with whom Defendant met three to four times per week.[59]  CI No. 3 also indicated that Defendant stored his methamphetamine in his locked bedroom, so that his mother, with whom he lived, did not have access to the drugs.[60]  CI No. 3 further stated that Defendant was selling the methamphetamine and using the profits from those sales to pay for his and his mother's living expenses.[61]

In March 2007, Reid used an independent source to corroborate the CIs' assertions that Defendant's main source of income was derived from selling methamphetamine and that Defendant had not held a legitimate job for a number of years.[62]  More specifically, Reid

---

[56]  *See id.*

[57]  *See id.*

[58]  *See id.*

[59]  *See id.*

[60]  *See id.*

[61]  *See id.*

[62]  *See id.*

contacted both the "Utah State Income Tax department" and the Internal Revenue Service.[63]
Both entities confirmed that Defendant had not reported any income for a number of years.[64]
Reid believed that this information authenticated information he had learned from all four of the
CIs.[65]

Finally, Reid stated that CI No. 3 had "[r]ecently" been in contact with Defendant and
learned that Defendant was still buying large quantities of methamphetamine from his supplier in
Salt Lake City; storing the methamphetamine in his bedroom inside the home he shared with his
mother at 3750 South Midland Drive, #15; and selling large amounts of methamphetamine to a
number of people in the Ogden, Utah area and the Roy, Utah area.[66]

For all of these reasons, Reid stated that he believed probable cause existed for a search
warrant to be issued for Defendant's home at 3750 South Midland Drive, #15, in Roy, Utah.[67]

### STANDARD OF REVIEW

When reviewing a decision to issue a search warrant, the reviewing court "give[s] great
deference to the decision of the issuing magistrate or judge."  *United States v. Sims*, 428 F.3d
945, 954 (10th Cir. 2005) (quotations and citations omitted).  This court "need only ask whether,
under the totality of the circumstances presented in the affidavit, the . . . judge had a substantial

---

[63] *Id.*

[64] *See id.*

[65] *See id.*

[66] *Id.*

[67] *See id.* at p. 4.

basis for determining that probable cause existed." *United States v. Artez*, 389 F.3d 1106, 1111 (10th Cir. 2004) (quotations and citations omitted).  "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001).

## ANALYSIS

Defendant makes three arguments in support of his motion to suppress: (1) the information contained in the Reid Affidavit was stale and, therefore, could not have supported a finding of probable cause; (2) based on a totality of the circumstances, the information provided by the CIs could not have supported a finding of probable cause; and (3) the good faith exception recognized in *United States v. Leon*, 468 U.S. 897 (1984), does not apply in this case.  The court will address each argument in turn.

## I. Staleness

Defendant first argues that most, if not all, of the information in the Reid affidavit was stale and, therefore, could not have supported a finding of probable cause.  The court disagrees.

It is true that "probable cause to search cannot be based on stale information that no longer suggests that the items sought will be found in the place to be searched." *United States v. Mathis*, 357 F.3d 1200, 1206-07 (10th Cir. 2004) (quotations and citation omitted).  However, it is also "firmly established that whether information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity, and the nature of the property to be seized." *Id*. at 1207 (quotations and citation omitted).  "When the circumstances

suggest ongoing criminal activity, the passage of time recedes in importance." *United States v. Cantu*, 405 F.3d 1173, 1177 (10th Cir. 2005).  In addition, "otherwise stale information may be refreshed by more recent events." *Id*. at 1178.

In *Mathis*, the defendant argued that information contained in the affidavit in support of the search warrant for his residence was stale.  *See Mathis*, 357 F.3d at 1203, 1206-07.  In rejecting that argument, the court noted that the defendant "was suspected of continuous and ongoing drug activity" and that information contained in the affidavit "dated [the defendant]'s criminal venture to June 1999, and observations by various witnesses continued through January of 2001." *Id*. at 1207.  Even though some of the information in the affidavit was nearly two years old, the court stated that "[s]uch ongoing and continuous activity makes the passage of time less critical when judging the staleness of information upon which a search warrant is based." *Id*. (quotations and citations omitted).  Accordingly, the court held that the defendant's staleness argument was unavailing.  *See id*.

The Reid Affidavit demonstrates that, like the defendant in *Mathis*, Defendant was suspected of continuous and ongoing drug activity.[68]  While the Reid Affidavit indicates that the first observation of that alleged activity occurred in May 2003, nearly four years prior to the issuance of the search warrant, the remaining observations continued through December 2006,

---

[68] *See id*. at p. 2-3.

and perhaps even later.[69]  The ongoing and continuous nature of Defendant's suspected drug

activity "makes the passage of time less critical when judging the staleness of information upon

which a search warrant is based."  *Id*. (quotations and citations omitted); *see also United States v.*

*Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (rejecting the defendant's argument that a five-month

gap between receipt of information and issuance of the search warrant rendered that information

stale because the defendant's "drug activities were 'ongoing and continuous,' so that the passage

of time did not render the information stale").  Therefore, the court has determined that

Defendant's staleness argument is without merit.

## II.  Information Provided by the CIs

Defendant also argues that based on a totality of the circumstances, the information

provided by the CIs could not have supported a finding of probable cause.  Again, the court

disagrees.

The test for determining whether information from a confidential informant can establish

probable cause is well settled.  *See Illinois v. Gates*, 462 U.S. 213, 230-39 (1983).  "In *Illinois v.*

*Gates*, the Supreme Court adopted a 'totality of the circumstances' test to determine when

information from an anonymous or confidential informant can establish probable cause."  *Artez*,

389 F.3d at 1111; *see Gates*, 462 U.S. at 238.  "The Court explained that an informant's

---

[69]  *See id*.  Defendant attacks the final observation contained in the Reid Affidavit because
it does not provide a specific date, but instead indicates that CI No. 3 had "[r]ecently" been in
contact with Reid.  *Id*. at p. 3.  When the final observation is read in context with all of the
previous observations, which are listed chronologically, it would have been reasonable for Judge
Dutson to conclude that the final observation occurred sometime between December 2006 and
March 2007.

'veracity, reliability, and basis of knowledge are all highly relevant in determining the value of his report.'" *Artez*, 389 F.3d at 1111 (quoting *Gates*, 462 U.S. at 230). "However, 'a deficiency in one [factor] may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.'" *Id*. (alteration in original) (quoting *Gates*, 462 U.S. at 233). "Specifically, 'when there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant.'" *Id*. (quoting *United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000)).

Employing the totality of the circumstances test in this case, the court concludes that the information provided by the CIs does support a finding of probable cause. The Reid Affidavit indicates that Reid had found each of the CIs to be credible and truthful in the past.[70] Each of the CIs had previously provided credible and reliable information to Reid, which had either been corroborated through independent means or led to successful apprehensions and/or seizures of drugs in other cases.[71] That information established the reliability of the CIs and their tips. *See, e.g.*, *United States v. Leos-Quijada*, 107 F.3d 786, 792 (10th Cir. 1997) (concluding that tip from confidential informant was reliable when that informant's previous tips "resulted in the discovery of at least three marijuana loads and led to successful apprehensions approximately fifty percent of the time"). In addition, the Reid Affidavit indicates that several of the CIs' tips were based on

---

[70] *See id*. at p. 2.

[71] *See id*.

their personal knowledge and observations.[72]  For example, CI No. 4 indicated that he or she had

been one of Defendant's drug suppliers and, as a result, supplied Reid with detailed information

about Defendant's drug trafficking business.[73]  *See, e.g.*, *Gates*, 462 U.S. at 234 (stating that a

confidential informant's "explicit and detailed description of alleged wrongdoing, along with a

statement that the event was observed firsthand, entitles [a confidential informant's] tip to greater

weight than might otherwise be the case").  For these reasons, the court has determined that the

Reid Affidavit amply establishes the overall reliability of the information provided by the CIs.

     In addition to establishing the overall reliability of the CIs' information, the Reid

Affidavit also demonstrates that some of the information provided by the CIs was corroborated.

Reid indicated that he had independently contacted both the "Utah State Income Tax department"

and the Internal Revenue Service and learned that Defendant had not reported any income for a

number of years.[74]  This information helped corroborate CI No. 3's assertion that Defendant was

selling the methamphetamine and using the profits from those sales to pay for his and his

mother's living expenses.[75]  In addition, the anonymous tips and the consistency of the CIs' tips

helped to corroborate the information provided by the CIs.  The anonymous tips provided

information (e.g., Defendant's address and his alleged drug trafficking activities) that was

consistent with information provided by the CIs, and each of the CIs provided information that

---

[72] *See id.* at p. 3

[73] *See id.*

[74] *Id.*

[75] *See id.*

was consistent with the information provided by the other CIs.[76]  *See Artez*, 389 F.3d at 1114

(stating that "[a] tip from a second informant can also help corroborate information from a

confidential informant" and concluding that an "anonymous tip did provide some additional

corroboration of the confidential informant's tip").

Based on the foregoing, and on the totality of the circumstances, *see Gates*, 462 U.S. at

230-39; *Artez*, 389 F.3d at 1111, the court concludes that the information provided by the CIs in

this case was sufficient to support a finding of probable cause.  Accordingly, Defendant's

argument fails.

### III.  Good Faith Exception

Because the court has rejected Defendant's arguments and determined that the Reid

Affidavit was sufficient to support a finding of probable cause in this case, it is unnecessary for

the court to address the parties' arguments concerning the good faith exception recognized in

*United States v. Leon*, 468 U.S. 897 (1984).

### CONCLUSION

The court has determined that under the totality of the circumstances presented in the

Reid Affidavit, Judge Dutson had a substantial basis for determining that probable cause existed

for issuance of the search warrant in this case.  *See Artez*, 389 F.3d at 1111.  Accordingly, **IT IS**

**HEREBY RECOMMENDED** that Defendant's motion to suppress[77] be **DENIED**.

---

[76]  *See id.*

[77]  *See* docket no. 20.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object.  The parties must file any objection to this Report and Recommendation within ten (10) days after receiving it.  Failure to object may constitute waiver of objections upon subsequent review.

DATED this 20th day of September, 2007.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge